# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

BRIAN EUGENE MESERVE,

               Plaintiff,

     v.

UNITED STATES DEPARTMENT OF
JUSTICE, *et al*.,

              Defendants.

Civil Action No. 04-1844 (RBW)

## <u>MEMORANDUM  OPINION</u>

This matter is before the Court on defendants' motion for summary judgment.  Having

considered defendants' motion, plaintiff's opposition, and the record in this case, the Court will

grant the motion.

## I.  BACKGROUND

### *A.  Request No. 04-1652*

On or about December 11, 2003, plaintiff submitted a request for information pursuant to

the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to the Executive Office for United

States Attorneys ("EOUSA"), a component of the United States Department of Justice.

Amended Complaint ("Amd. Compl.") ¶ 2.  Generally, he sought records pertaining to himself

and the criminal case that had been filed against him.  Memorandum of Points and Authorities in

Support of Defendants' Motion to Dismiss,[1] Attach. ("Boseker I Decl."), Ex. A (December 10,

---

[1]     Defendants withdrew their motion to dismiss [Dkt. #19]  on March 28, 2005.

2003 FOIA Request).  The EOUSA acknowledged receipt of plaintiff's request, and assigned it

Request No. 03-4096.  *Id.*, Ex. B (January 13, 2004 letter from M.A. O'Rourke, Asst. Dir.,

Freedom of Information/Privacy Act Unit, EOUSA).  In the letter, the EOUSA asked that

plaintiff identify the United States Attorney's Office where he believed the relevant records were

located, and notified him that fees may be charged to duplicate any responsive records.  *Id.*  The

request was closed, with the understanding that the EOUSA would open a new file upon receipt

of a corrected request.  *Id.*

Plaintiff submitted a new FOIA request on or about January 20, 2004.  Amd. Compl. ¶ 4.

He identified the United States Attorney's Office for the District of Maine as the appropriate

office, and revised his request as follows:

> The files I request include but are not limited to (<u>Cr. Docket Case 99-
> CR-19/99-CR-30</u>).  I further request copies of any and all records
> reference [sic] myself including but not limited to, <u>documents</u>,
> <u>reports</u>, <u>memoranda</u>, <u>letters</u>, <u>electronic files</u>, <u>database reference</u>, "<u>Do
> not files</u>," "<u>O&C files</u>," "<u>P&C files</u>," or <u>any other files</u>; <u>audio or
> video tapes</u>, <u>electronic (ELSER)</u> or "<u>June mail</u>," "<u>mail covers</u>, <u>trash
> covers</u>, <u>miscellanious [sic] files</u>, and any <u>index citations relating or
> reference [sic] me</u>.

Boseker I Decl., Ex. C (January 16, 2004 FOIA Request) at 1-2 (emphasis in original).  The

EOUSA acknowledged receipt of the request, and assigned it Request No. 04-1652.  *Id.*, Ex. D

(June 2, 2004 letter from M.A. O'Rourke).

The EOUSA notified plaintiff of its decision to release 300 pages of records in full,

release 173 pages in part, withhold 451 pages in full, withhold 46 pages of grand jury records in

full, and refer 41 pages of records to the agencies where they originated.[2]  *Id.* ¶ 10 & Ex. E

---

[2]     The letter also notified plaintiff that it would not release a copy of his

(continued...)

(January 13, 2005 letter from M.A. O'Rourke) at 1.  However, only 100 pages of records were included in the January 13, 2005 release, as these pages were provided without plaintiff being required to pay any fee.  *Id.*, Ex. E at 3.  Plaintiff was advised that, upon payment of $37.30 in copying fees, the EOUSA would release the remaining 373 pages of records and refer the 41 pages of records to other agencies: the Federal Bureau of Investigation ("FBI"), the Bureau of Alcohol, Tobacco, Firearms and Explosives ("BATFE"), and the United States Marshals Service ("USMS").  *Id.*, Ex. E at 2.  Plaintiff challenged this partial denial of his request by submitting an appeal to the Justice Department's Office of Information and Privacy ("OIP").  *Id.*, Ex. F (undated Appeal received by OIP on February 3, 2005).  The OIP then notified plaintiff that it had closed the appeal administratively due to plaintiff's apparent failure to pay the copying fees in full.  *Id.*, Ex. G (March 3, 2005 letter from R. L. Huff, Co-Dir., OIP).  The EOUSA later realized that plaintiff had paid the copying fees.  Memorandum of Points and Authorities in Support of Defendants' Motion for Summary Judgment ("Defs.' Mot."), Attach. ("Boseker II Decl.") ¶ 1 & Ex. *i* (January 13, 2005 letter from M.A. O'Rourke).  As a result of this discovery, on March 28, 2005, the EOUSA released the remaining 373 pages of records, and referred records to the other agencies as set forth in its January 13, 2005 letter.  *Id.*, Ex. *i*.

The EOUSA referred eight pages of records to the FBI.  Boseker I Decl., Ex. E at 2.  Evidently, all eight pages were withheld in full under FOIA Exemption 7(C).  Defs.' Mot.,

---

[2](...continued)
presentence investigation report because, pursuant to the Bureau of Prisons Program Statement 1351.05, Release of Information (Sept. 19, 2002), inmates are not allowed to possess these reports.  Boseker I Decl., Ex. E at 4.

Attach. A (April 21, 2005 letter from D.H. Hardy, Records Management Division, FBI).[3]  The

USMS released in part the one page referred to it after having redacted the "[n]ames of and/or

information on government employees" under FOIA Exemption 7(C).  *Id.*, Attach. A (June 21,

2005 letter from W.E. Bordley, Assoc. Gen. Counsel/FOIPA Officer).  The disposition of the 32

pages of records referred to the BATFE, *see* Boseker I Decl., Ex. E at 2, was not explained.  *See*

*id.*, Attach. A (April 6, 2005 letter from P.J. Chisholm, Disclosure Specialist, BATFE).[4]  Plaintiff

was instructed to pursue any challenge to these responses by contacting defendants' counsel.  *See*

*id.*, Ex. E.  Defendant's counsel represented that plaintiff "has not indicated any dissatisfaction."

Defs.' Mot. at 4 n.4.

Some weeks later, the United States Attorney's Office for the District of Maine

("USAO/DME") notified the EOUSA that it had located additional records responsive to

plaintiff's FOIA request, and forwarded these documents to the EOUSA.  Boseker II Decl. ¶ 2.

After notifying plaintiff of the existence of these additional records and the estimated copying

fees, the EOUSA released to plaintiff another 1,118 pages of records.  *Id.* ¶¶ 3-6 & Ex. iv (July

26, 2005 letter from M.A. O'Rourke).  The EOUSA explained that it was withholding an

undetermined number of pages of records in full, and that these records would be described in

more detail as this litigation progressed.  *Id.*, Ex. iv.

---

[3]     The document posted on the Court's electronic docket is barely legible.

[4]     This document only clarifies instructions to plaintiff regarding any objections
he may have to the BATFE's decision.  It does not indicate whether the BATFE
released or withheld the records.  *See* Defs.' Mot., Attach. A (April 6, 2005 letter
from P.J. Chisholm, Disclosure Specialist).

*B.  Request No. 04-4145*

Plaintiff submitted an additional FOIA request to the EOUSA on June 14, 2004.   Amd.

Compl. ¶ 10.  In the second request he sought:

> [A]ll of the following information and documents pertaining to:
> Federal A.U.S.A. James McCarthy, S/A Kenneth McMasters at the
> U.S. Attorney Office; P.O[.] Box 2460, Bangor, Maine 04402-2460.
> This pertains to all federal cases, dockets, investigations.  To my
> knowledge there are two: 99-Cr-00019 and 99-Cr-00030.  I would
> like you to forward me general request information.  However, I am
> particularly interested in anything pertaining to a Holly Grant [].  Her
> cooperation, how she was located, questioned, interviewed, her
> criminal cases, relationships with authorities[,] phone calls with
> police, agreements to cooperate, or anything else.

Boseker I Decl., Ex. H (June 14, 2004 FOIA Request) (emphasis added).  The EOUSA

responded to this request, which it assigned Request No. 04-4145, explaining its refusal to search

for records "absent express authorization and consent of the third party, proof that the subject of

[the] request is deceased, or a clear demonstration that the public interest in disclosure outweighs

the personal privacy interest and that significant public benefit would result from the disclosure

of the requested records."  *Id.*, Ex. I (November 5, 2004 letter from M.A. O'Rourke).

Plaintiff objected to this response, principally on the ground that Holly Grant's role in

prosecuting the criminal case against him was public information, included both in newspaper

articles and in the published opinion affirming his conviction.  *See* Plaintiff's Response in

Affidavit to Defendant's Motion for Summary Judgment ("Pl.'s Opp.") at 6-12; *see also United

States v. Meserve*, 271 F.3d 314 (1st Cir. 2004).  The EOUSA reconsidered its decision, and

bifurcated Request No. 04-4145 "into those documents relating to [Ms. Grant's] participation as

a witness, and any other documents which may or may not exist relating to her determined not to

relate to that participation."  Defendant's Reply Memorandum in Support of Defendant's

Summary Judgment Motion ("Defs.' Reply"), Attach. ("Boseker III Decl.") ¶ 2.  Accordingly, the

EOUSA "confirm[ed] the existence of responsive records of approximately 115 pages" relating

to Ms. Grant's participation as a witness at plaintiff's criminal trial.  *Id.* ¶ 3.  The agency

maintained, however, that the information was exempt from disclosure under FOIA Exemption

7(C).  *Id.* ¶¶ 3, 5.

    In this action, plaintiff demands release of all the requested records in their entirety.[5]

---

[5]     In his opposition to defendants' summary judgment motion, plaintiff makes
clear that his "interest has always been the illegal inducements/coercion made to star
witness Holly Grant by prosecutor and police that were part of the prosecution team
in plaintiff's criminal cases."  *See* Pl.'s Opp. at 2.  He raises no objection to the
adequacy of the EOUSA's search for responsive records, and does not challenge the
EOUSA's decision to withhold certain information under FOIA Exemptions 3 and
5.  The Court therefore treats these matters as conceded.  However, even if plaintiff
had challenged the withholding of information under these claimed exemptions, the
Court's review of the record would have caused it to conclude that the EOUSA's
decisions were proper.

    The grand jury materials, *see* Boseker II Decl., *Vaughn* Index (Doc. Nos. 35-
36), which included correspondence, witness subpoenas, transcripts, and evidence,
fall within the scope of FOIA Exemption 3.  *See Senate of the Commonwealth of
Puerto Rico,* 823 F.2d 574, 582 (D.C. Cir. 1987) (quoting *Securities and Exchange
Comm'n v. Dresser Indus., Inc.*, 628 F.2d 1368, 1382 (D.C. Cir. 1980) (en banc)).
This result is called for because release of the documents "would reveal the scope of
the grand jury and the direction of the investigation by providing the identities of the
targets of the investigation, the source of the evidence, as well as the actual evidence
produced before the grand jury."  Boseker II Decl. ¶ 14.

    FOIA Exemption 5, which protects attorney work product, *see Fed. Trade
Comm'n v. Grolier, Inc.*, 462 U.S. 19, 28 (1983) (holding that "attorney
work-product is exempt from mandatory disclosure without regard to the status of the
litigation for which it was prepared."), and pre-decisional information that is a direct
part of a deliberative process in that it makes recommendations or expressed opinions
on legal or policy matters.  *See Vaughn v. Rosen*, 523 F.2d 1136, 1143-44 (D.C. Cir.
1975).  The declarations submitted by the EOUSA establish that it properly withheld

(continued...)

## II.  DISCUSSION

### *A.  Summary Judgment Standard*

The Court may grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the burden of demonstrating the absence of any genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Factual assertions in the moving party's affidavits may be accepted as true, unless the opposing party submits his own affidavits or documentary evidence that contradict the movant's assertions.  *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992) (citing *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982)).

To obtain summary judgment in a FOIA action, an agency must show, viewing the facts in the light most favorable to the requester, that there is no genuine issue of material fact with regard to the agency's compliance with the FOIA.  *Steinberg v. United States Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994) (citing *Weisberg v. United States Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984), *reh'g denied*, 763 F.2d 1436 (D.C. Cir. 1985)).  The Court may award summary judgment based solely upon the information provided in affidavits or declarations when the affidavits or declarations describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed

---

[5](...continued)
both records prepared by the prosecutor, and inter- and intra-agency communications regarding the criminal case that was brought against plaintiff.  *See Vaughn* Index (Doc. Nos. 2, 7, 15, 22, 24, 25, 26, 34, 36, 37, and 38).

exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."[6]  *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).  Such affidavits or declarations "are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Serv., Inc. v. Securities and Exchange Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. Central Intelligence Agency*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

### B.  FOIA Exemption 7

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," but only to the extent that disclosure of such records would cause an enumerated harm.  5 U.S.C. § 552(b)(7); *see Fed. Bureau of Investigation v. Abramson*, 456 U.S. 615, 622 (1982).  In order to withhold materials properly under Exemption 7, an agency must establish that the records at issue were compiled for law enforcement purposes, and that the material satisfies the requirements of one of the subparts of Exemption 7.  *See Pratt v. Webster*, 673 F.2d 408, 413 (D.C. Cir. 1982).  In assessing whether records are compiled for law enforcement purposes, the "focus is on how and under what circumstances the requested files were compiled, and whether the files sought relate to anything that can fairly be characterized as

---

[6]      In support of its motion, defendant submits three declarations of John F. Boseker, an Attorney Advisor with the EOUSA, executed on March 3 (Boseker I Decl.), September 5 (Boseker II Decl.), and October 25, 2005 (Boseker III Decl.). In addition to other official duties, the declarant reviews FOIA requests, searches for records responsive to such requests, and provides the EOUSA's responses to requesters.  Boseker I Decl. ¶¶ 3-4.  Further, he is responsible for defining the EOUSA's positions in litigation of challenges to its FOIA responses.  *Id.* ¶ 3.  Mr. Boseker personally is familiar with plaintiff's FOIA requests.  *Id.* ¶ 2.

an enforcement proceeding." *Jefferson v. Dep't of Justice*, 284 F.3d 172, 176-77 (D.C. Cir.

2002) (citations and internal quotations omitted).

Given the nature of plaintiff's FOIA requests and the descriptions of the records located

pursuant to the EOUSA's search, it is clear that the relevant records were compiled for law

enforcement purposes. All of the records were "maintained in the Criminal Case File System

(Justice/USA-007) and in the criminal case file U.S. v. Brian Meserve, 1999R00040 (including

CR-99-19-B and CR-99-30-B). [Plaintiff] was investigated, prosecuted, and convicted of

robbing and taking the property of Ferris Market by threatened force, violence, and fear of injury

to persons," as well as firearms offenses. Boseker II Decl. ¶ 10. In addition, the records reflected

that plaintiff had been convicted of aggravated burglary in Ohio in 1985, and of possession of a

firearm by a felon in Maine in 1996. *Id.*

a.  FOIA Exemption 7(C)[7]

Exemption 7(C) protects from disclosure information in law enforcement records that

"could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5

U.S.C. § 552 (b)(7)(C). In determining whether this exemption applies to particular material, the

Court must balance the interest in privacy of individuals mentioned in the records against the

public interest in disclosure. *Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993).

Individuals have a "strong interest in not being associated unwarrantedly with alleged criminal

activity." *Stern v. Fed. Bureau of Investigation*, 737 F.2d 84, 91-92 (D.C. Cir. 1984). "[T]he

only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens'

---

[7]      The records referred to the FBI and the USMS were released to plaintiff in
part, after redactions were made under Exemption 7(C). Plaintiff does not raise an
objection to these decisions.

right to be informed about what their government is up to.'" *Davis v. United States Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)).

> *i. Law Enforcement Officers and Third Parties other than Holly Grant*

The EOUSA withholds under Exemption 7(C) the names of and identifying information about law enforcement officers and third parties, including witnesses.  Boseker II Decl. ¶¶ 27, 29, 30-31.  Case law fully supports the EOUSA's position.

The EOUSA's declarant states that the identities of federal special agents, local law enforcement personnel, and other government personnel who participated in the investigation and prosecution of cases against plaintiff are withheld to protect these individuals from "an unwarranted invasion of personal privacy," as disclosure "would not inform the public concerning EOUSA's performance of its statutory duties." *Id.* ¶ 29.  These individuals' "duties and assignments are not public and the publicity that would likely arise from disclosure would seriously impede, if not totally jeopardize, law enforcement effectiveness in subsequent cases, even subjecting these individuals to harassment or other harm." *Id.*  Redaction of the names of federal, state and local law enforcement personnel under similar circumstances routinely is upheld. *See Lesar v. United States Dep't of Justice*, 636 F.2d 472, 487 (D.C. Cir. 1980) (finding legitimate interest in preserving the identities of government officials where disclosure could subject them to annoyance or harassment in either their official or private lives); *Pray v. Dep't of Justice*, 902 F. Supp. 1, 3 (D.D.C. 1995) (finding that "animosity or grudges toward special agents" resulting from release of information outweighed any possible benefit from disclosure), *aff'd in relevant part*, 1996 WL 734142 (D.C. Cir. Nov. 20, 1996).

Similar justification for non-disclosure applies where the EOUSA invokes Exemption 7(C) to withhold the identities of and personal information about third parties mentioned in these records. *See, e.g., Rugiero v. United States Dep't of Justice*, 257 F.3d 534, 552 (6th Cir. 2000) (concluding that agency properly withheld "identifying information on agents, personnel, and third parties after balancing the privacy interests against public disclosure), *cert. denied*, 534 U.S. 1134 (2002); *SafeCard Serv., Inc. v. Securites and Exchange Comm'n*, 926 F.2d at 1206 (holding that "names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) [are] exempt from disclosure").  Release of such information "could result in unwanted and even unlawful efforts to gain further access to such persons or to personal information about them," perhaps "lead[ing] to harassment, harm, or exposure to unwanted and/or derogatory publicity and inferences arising from their connection to the case."  Boseker II Decl. ¶ 27.  Further, release "could subject such persons to an unwarranted invasion of their personal privacy," without serving a public interest, "as it would not shed light on EOUSA's performance of its statutory duties."  *Id.*

Exemption 7(C) recognizes that the stigma of being associated with any law enforcement investigation affords broad privacy rights to those who are connected in any way with such an investigation unless a significant public interest exists for disclosure.  *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. at 773-775; *SafeCard Serv., Inc. v. Securities and Exchange Comm'n*, 926 F.2d at 1205-06.  The disclosure of the names of private individuals mentioned in law enforcement files would serve a significant public interest only where "there is compelling evidence that the agency denying the FOIA request is engaged in illegal activity," and that the information sought "is necessary in order to confirm or refute that

evidence." *Davis v. United States Dep't of Justice*, 968 F.2d at 1282.  Plaintiff demonstrates no such public interest with respect to the law enforcement personnel or the third parties mentioned in responsive records.

*ii.  Holly Grant*

If an individual is the target of a FOIA request, the agency to which the FOIA request is submitted may provide a "Glomar" response, that is, the agency may refuse to confirm or deny the existence of records or information responsive to the FOIA request on the ground that even acknowledging the existence of responsive records constitutes an unwarranted invasion of the targeted individual's personal privacy.  *Phillippi v. Central Intelligence Agency*, 546 F.2d 1009, 1014-15 (D.C. Cir. 1976) (CIA refused to confirm or deny existence of secret vessel, the "Glomar Explorer"); *see Nation Magazine v. United States Customs Serv.*, 71 F.3d 885, 893 (D.C. Cir. 1995); *Enzinna v. United States Dep't of Justice*, No. 97-5078, 1997 WL 404327, *2 (D.C. Cir. June 30, 1997) (agency refusal to confirm or deny existence of responsive records appropriate because acknowledging existence of records would associate witnesses with criminal investigation).

Citing such privacy concerns, the EOUSA initially neither confirmed nor denied the existence of records responsive to plaintiff's second FOIA request for information pertaining to Holly Grant.  Boseker I Decl., Ex. I.  Subsequently, in light of plaintiff's valid assertion that Ms. Grant's participation in the criminal case is public knowledge, the EOUSA bifurcated Request No. 04-4145.  Boseker III Decl. ¶ 3.  The EOUSA confirmed the existence of 115 pages of records responsive to plaintiff's request for information pertaining to Ms. Grant's participation as a witness at plaintiff's criminal trial, and re-asserted its Glomar response only as to "any other

documents which may or may not exist relating to her determined not to relate to that

participation." *Id.*; *see Vaughn* Index (Document Nos. 6, 9, 13, 24, 29, 36, 37, and 40).  Thus,

the EOUSA properly provided a *Glomar* response only with respect to records that are not related

to her public participation in plaintiff's criminal case.  *See Nation Magazine v. United States*

*Customs Serv.*, 71 F.3d at 894-96; *Grove v. Dep't of Justice*, 802 F.Supp.506, 510-14 (D.D.C.

1992) (Navy properly provided Glomar response with respect to criminal investigative records,

but not to administrative personnel files).

        The fact that the EOUSA acknowledges the existence of law enforcement records

pertaining to Ms. Grant does not lead inevitably to the conclusion that it must disclose these

records.  The agency still may demonstrate a basis for withholding information under a claimed

exemption.  *Cf. Nat'l Cable Television Ass'n v. Fed. Commc'n Comm'n*, 479 F.2d 183, 186

(D.C. Cir. 1973) (noting agency's burden to "prove that each document that falls within the class

requested either has been produced, is unidentifiable, or is wholly exempt from [the FOIA's]

inspection requirements").

        Plaintiff vigorously asserts that the public interest in disclosure outweighs any privacy

interest asserted  on Holly Grant's behalf.  He "strongly declare[s] that documentation exist[s] . .

. that would support that Holly Grant, (star witness for the prosecution) received, directly or

indirectly, from federal and or state authorities from the state of Maine, inducements as to her

cooperation, Grand Jury testimony and trial testimony for the government."  Pl.'s Opp., Ex. 14

("Pl.'s Aff.") at 1.  According to plaintiff, these inducements may include Ms. Grant's release

from an Indiana jail, "as well as the reduction, dismissal & swift disposal of the Indiana charges,"

promises of help in a child custody case then pending in the Waterville District Court, dismissal

of credit card theft and fraud charges pending against her in the Rockland District Court, and

waiver of outstanding fines.  *Id*. at 1.  With these alleged inducements, plaintiff opines that Ms.

Grant could "return to Maine <u>freely</u> to attend her child custody case as well as begin her

cooperation with police" in plaintiff's criminal case.  *Id.* at 4 (emphasis in original).

Plaintiff asserts that law enforcement's decision to prosecute him, while entering into a

plea agreement with his accomplice (Ms. Grant), is a matter of public interest.  *Id*. at 10.  In

addition, he suggests that "it would very much be in the public's interest to know whether

prosecutors and or law enforcement were underhanded in any of those so called waiver

agreements for those accomplices."  *Id.* at 11.  Thus, posits plaintiff, law enforcement officers

"involved in dishonestly informing the media/public, that all that was afforded to an accomplice,

such as Holly Grant, was immunity, when much more than immunity was involved in gaining

that accomplice[']s cooperation, is information the public should know and in it's [sic] interest to

know."  *Id.*

Plaintiff's arguments are not persuasive.  The fact that Holly Grant testified at a public

trial does not diminish her privacy interests, as a witness who testifies at a trial does not waive

her personal privacy.  *See Jones v. Fed. Bureau of Investigation*, 41 F.3d 238, 247 (6th Cir. 1994)

(law enforcement employee who chooses or is required to testify does not waive personal

privacy); *Lardner v. United States Dep't of Justice*, No. 03-0180, 2005 WL 758267, *19 (D.D.C.

Mar. 31, 2005) (concluding that name of witness who testified at public trial properly was

withheld under Exemption 7(C)).

From the beginning, plaintiff has made clear that his interest in seeking the full disclosure

of the requested records is in pursuing both a motion for new trial under Rule 33 of the Federal

Rules of Criminal Procedure and a motion to vacate or set aside his sentence under 28 U.S.C.

§ 2255. *See* Amd. Compl. at 4; Motion for Defendant's [sic] to File Vaughn Index at 2; Pl.'s

Opp. at 2. This is not a public interest. "The courts have consistently refused to recognize any

public interest in disclosure of information to assist a convict in challenging his conviction."

*Burke v. United States Dep't of Justice*, No. 96-1739, 1999 WL 1032814, *4 (D.D.C. Sept. 30,

1999); *Taylor v. United States Dep't of Justice*, 257 F.Supp.2d 101, 110 (D.D.C. 2003)

(disclosure under the FOIA of potentially exculpatory information that prosecutors must disclose

to criminal defendants pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), is in a plaintiff's

private interest, not the general public interest), *reconsideration denied*, 268 F.Supp.2d 34

(D.D.C. 2003); *Johnson v. United States Dep't of Justice*, No. 85-714, 1991 WL 251940, *1

(D.D.C. Nov. 13, 1991) (possibility that disclosure of records might reveal that prosecution

witnesses at requester's criminal trial were given favorable treatment for their testimony which

was not disclosed at trial did not outweigh witnesses' substantial privacy interests); *cf. McClain

v. United States Dep't of Justice*, 13 F.3d 220, 220-21 (7th Cir. 1993) (fee waiver denied to

indigent prisoner who pursued his private interest – a challenge to his criminal conviction –  in

seeking FBI records about himself).

    In short, Ms. Grant's privacy interests prevail in the absence of a cognizable public

interest in disclosure. Thus, absent such a public interest, the EOUSA properly withholds any

information pertaining to a third party, such as Ms. Grant, who may be mentioned in law

enforcement records.[8]

---

[8]    Plaintiff does not allege that Ms. Grant has waived her privacy interest or that she has died.

In the alternative, plaintiff argues that the records at issue must be released under the "public domain doctrine."  *See* Plaintiff's Motion for Permission to File Response to Defendant's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment ("Pl.'s Surreply") at 2-5, 7.  Under the public domain doctrine, records which otherwise may be exempt from disclosure under the FOIA "lose their protective cloak once disclosed and preserved in a permanent public record."  *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999).  This is because "where information requested 'is truly public, then enforcement of an exemption cannot fulfill its purposes.'"  *Id.* (quoting *Niagara Mohawk Power Corp. v. United States Dep't of Energy*, 169 F.3d 16, 19 (D.C. Cir. 1999)).  A plaintiff who seeks disclosure of such records bears "the initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld."  *Afshar v. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983); *see Davis v. United States Dep't of Justice*, 968 F.2d at 1280 (plaintiff  must "point to specific information identical to that being withheld").

In support of his argument, plaintiff has produced, in addition to other items, copies of newspaper articles recounting Ms. Grant's participation at trial, copies of records pertaining to her arrest and the charges lodged against her by the State of Indiana, along with excerpts of transcripts of her trial testimony.  *See, e.g.*,  Pl.'s Opp. , Ex. 1 (excerpt from Rule 33 motion and § 2255 motion), Exs. 21-23 (summaries of interviews with E. Handy and T. Nadeau), Ex. 24 (Bragg Affidavit); Pl.'s Surreply, Ex. 27 (excerpt of Ms. Grant's trial testimony).  These documents bolster plaintiff's assertions that Ms. Grant entered into an agreement with the government pursuant to which she avoided prosecution for certain alleged criminal activity in exchange for testimony she provided against plaintiff at his trial.  *See* Pl.'s Surreply, Ex. 27

16

(excerpt of Ms. Grant's trial testimony).  Plaintiff's argument fails, however, because he does not

point to any specific record, document or information that is identical to what is being withheld

under the claimed exemption.  Accordingly, there is no showing from which the Court can

conclude with any confidence that the information sought by plaintiff truly is in the public

domain.  *See Cottone v. Reno*, 193 F.3d at 555.

### b.  FOIA Exemption 7(D)

Exemption 7(D) protects from disclosure those records or information compiled for law

enforcement purposes that:

> could reasonably be expected to disclose the identity of a confidential
> source, including a State, local or foreign agency or authority or any
> private institution which furnished information on a confidential
> basis, and, in the case of a record or information compiled by a
> criminal law enforcement authority in the course of a criminal
> investigation. . ., information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D).  There is no assumption that a source is confidential for purposes of

Exemption 7(D) simply because the source provided information to a law enforcement agency in

the course of a criminal investigation.  *See United States Dep't of Justice v. Landano*, 508 U.S.

165, 181 (1993).  "A source is confidential within the meaning of 7(D) if the source provided

information under an express assurance of confidentiality or in circumstances from which such

an assurance could reasonably be inferred."  *Williams v. Fed. Bureau of Investigation*, 69 F.3d

1155, 1159 (D.C. Cir. 1995) (citing *United States Dep't of Justice v. Landano*, 508 U.S. at 170-

74).  "[T]he question is not whether the requested *document* is of the type that the agency usually

treats as confidential, but whether the particular *source* spoke with an understanding that the

communication would remain confidential."  *United States Dep't of Justice v. Landano*, 508 U.S.

17

at 172 (emphasis in original).  This determination is made on a case-by-case basis.  *Id.* at 179-80.

The EOUSA has withheld information under Exemption 7(D) on the ground that the sources at issue supplied information to law enforcement officers under an implied grant of confidentiality.  *See* Boseker II Decl. ¶ 34.  Principally, it has withheld information supplied by eyewitnesses to the  Ferris Market armed robbery during which plaintiff made threats of harm, and information supplied by a cooperating witness as to plaintiff's whereabouts while he was a fugitive.  *Id.* ¶ 36 & *Vaughn* Index (Doc. Nos. 2, 3 and 5).  In addition, the EOUSA has withheld certain information in records originating from Maine and Ohio police departments concerning investigations into plaintiff's prior violent criminal activities, including aggravated assault, aggravated burglary, and weapons offenses.  *See id.*  (Doc. Nos. 20, 21, 28 and 32).  These sources "supplied information to law enforcement officers in connection with one or more aspects of [plaintiff's] criminal activity."  Boseker II Decl. ¶ 37.  "In the present case, [Exemption 7(D)] was applied to protect eyewitness statements regarding [an] armed robbery during which threats of harm were made, creating an inference of confidentiality in the giving of statements, enhanced by certain of these persons expressing fear."  *Id.* ¶ 36.

The declarant explains that disclosure of the identities of or information supplied by confidential sources "could have a disastrous impact upon the ability to obtain this kind of investigative information in the future, and would have a chilling effect upon the free-flow of information essential to pursue and resolve criminal prosecutions."  Boseker II Decl. ¶ 35.  In addition, the declarant contends that release of such information "would endanger individual informants, likely making them targets of harassment or other forms of reprisal."  *Id.*  Based upon these representations, the Court concludes that Exemption 7(D) properly is applied in these

circumstances.

The EOUSA also invokes Exemption 7(D) to protect information regarding plaintiff's criminal history supplied by the State of Ohio. Boseker II Decl. ¶ 39 & *Vaughn* Index (Doc. No. 23). A state or local law enforcement agency may be a confidential source for purposes of Exemption 7(D). *See Williams v. Fed. Bureau of Investigation*, 69 F.3d at 1158; *Founding Church of Scientology of Washington, D.C., Inc. v. Levi*, 579 F.Supp. 1060, 1063 (D.D.C. 1982) (approving the withholding from law enforcement records the identities of state, local and foreign law enforcement agencies), *aff'd*, 721 F.2d 828 (D.C. Cir. 1983). Printed on Ohio's transmission is a statement that the data contained therein "is only to be used for criminal justice purposes." *See Vaughn* Index (Doc. No. 23). The EOUSA interprets this statement "as creating confidentiality in the transmission . . ., and is subject to withholding under [Exemption 7(D)] on that basis." *Id.* This interpretation is reasonable under the circumstances, as evidenced by the statement printed on the transmitting entity's form. From the perspective of the source, *see Billington v. United States Dep't of Justice*, 233 F.3d 581, 585 (D.C. Cir. 2000), the State of Ohio provided the information under an implied assurance of confidentiality. It therefore is exempt from disclosure under Exemption 7(D).

### C. Segregability

If a record contains information that is exempt from disclosure, any reasonably segregable information must be released after deleting the exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions. 5 U.S.C. § 552(b); *Trans-Pacific Policing Agreement v. United States Customs Serv.*, 177 F.3d 1022, 1026-27 (D.C. Cir. 1999). The Court errs if it "simply approve[s] the withholding of an entire document without entering a finding on

segregability, or the lack thereof." *Powell v. United States Bureau of Prisons*, 927 F.2d 1239,

1242 n.4 (D.C. Cir. 1991) (quoting *Church of Scientology  v. Dep't of the Army*, 611 F.2d 738,

744 (9th Cir.1979)).

Having reviewed agency's declarations and the *Vaughn* index submitted in support of the

motion, the Court concludes that only the exempt records or portions of records have been

withheld, and that all reasonably segregable material has been released to plaintiff.  And the

declarations and *Vaughn* index related to these records adequately specify "in detail which

portions of the document[s] are disclosable and which are allegedly exempt." *Vaughn v. Rosen*,

484 F.2d 820, 827 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974).

### III.   CONCLUSION

For the reasons discussed herein, the Court concludes that the agency conducted an

adequate and reasonable search for records responsive to plaintiff's FOIA request, that it properly

withheld records or portions of records under Exemptions 3, 5, and 7, and that it released all

reasonably segregable material.  Accordingly, defendants' motion for summary judgment will be

granted.  An Order consistent with this Memorandum Opinion will be issued separately on this

same date.

_____/s/_____
REGGIE B. WALTON
United States District Judge

Date:  August 14, 2006